UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEWAYNE RAMON THOMPSON, | No. 2:14-cv-2501 JAM KJN P (TEMP) |
| Petitioner, | |
| v. | |
| J. MACOMBER, | FINDINGS AND RECOMMENDATIONS |
| Respondent. | |

Petitioner is a state prisoner, proceeding without counsel, with a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his August 9, 2014 prison disciplinary conviction for battery on a peace officer. He seeks federal habeas relief on the grounds that his due process rights were violated at the disciplinary hearing. Upon careful consideration of the record and the applicable law, the undersigned recommends that petitioner's application for habeas corpus relief be denied.

**I. Background**

Petitioner is serving a prison sentence for robbery, burglary, and assault with a firearm. People v. Thompson, No. E029200, 2003 WL 1874796 (4th Dist. Cal. April 14, 2003). On July 1, 2013, Correctional Officer (C/O) T. Farley wrote a rules violation report (RVR) charging petitioner with "battery on peace officer." (ECF No. 1 at 32.) C/O Farley alleged, in pertinent part, that:

> On Monday, December 10, 2012, at approximately 0935 hours, while working as B6 Floor #1, I was on the B Facility 3 yard observing morning yard when I heard the B observation order the yard to "get down." As I responded from the area in front of Building 5, I could see two inmates fighting next to the basketball court. Both inmates were engaged in striking one another about the upper body, head and chest area. Both inmates were also trying to grab at each other; I could not make out who was the aggressor and who was the victim. The two inmates were identified later using their State identification cards as inmates THOMSON, T-12115, B8-126L and DAVIS, H-49071, B7-107L.
>
> As I responded I was yelling repeated verbal commands to the fighting inmates to stop there [sic] attack on one another and assume a prone position. Both inmates ignored mine and other staffs verbal commands and continued fighting and went to the ground attacking one another. Sergeant R. Basso sprayed the involved inmates with a continues [sic] burst from his State issued MK-9 Oleoresin Capsicum sprayer (OC), striking both inmates in the face and upper body. The (OC) did not have the desired effect and both inmates continued their attack on one another. DAVIS remained on the ground as THOMPSON separated, got to his feet and staggered back approximately ten feet, circled around, advanced, and kicked DAVIS in the head. THOMPSON dove on top of DAVIS and grabbed DAVIS in a choke hold. Officer Contreras sprayed a continues [sic] burst of (OC) striking both inmates in the head and upper body. THOMPSON suddenly jumped to his feet and rushed towards me and grabbed my chest. Fearing for my safety, I used my State issued baton and utilized a forward strike, striking THOMPSON in the left shoulder. Do [sic] to the threat of great bodily injury to myself, I struck THOMPSON a second time in the upper left arm with another forward strike. THOMPSON remained on his feet and turned and faced Officer Caraway. Fearing for Officer Caraway's safety, I struck THOMSON with a third forward strike, striking THOMPSON on the lower torso, but did not have the desired effect. Therefore I used a fourth strike, striking THOMPSON on the right leg utilized [sic] a forward strike. Officer Caraway drew his baton, utilizing a forward strike hit THOMPSON in the upper torso area. THOMPSON went to the ground and assumed the prone position without further incident.

(Id. at 32-34.)[1]

The disciplinary hearing on the July 1, 2013 RVR was held on August 8, 2013. (Id. at 36.) Petitioner appeared at the hearing ready to proceed and stated that he was in good health.

---

[1] The RVR on this incident was originally written on December 12, 2012, but was ordered reissued/reheard because "there was no indication that the I.E. screened the prospective witnesses," as required by prison regulations. (ECF No. 1 at 36.) A second RVR was issued on April 30, 2013, but this RVR was also ordered reissued/reheard "because witness denial was not justified or addressed in the hearing summary." (Id.) The July 1, 2013 RVR was the third and final RVR regarding this incident.

(Id.)  Petitioner received copies of all applicable reports at least twenty-four hours in advance of the hearing.  (Id.)  Petitioner explained his understanding of those reports and stated he was prepared to begin the hearing.  (Id.)

A staff assistant was not assigned because petitioner spoke English and was literate, and the issues were not complex.  (Id.)  Petitioner agreed that assignment of a staff assistant was not necessary.

An investigative employee (IE) was assigned after the issuance of the first reissued/reheard RVR.  (Id. at 30, 36, 40.)  The IE interviewed petitioner and wrote a report for purposes of the disciplinary hearing on that RVR.  At that interview, petitioner told the IE that he wanted to have the video of the alleged battery "analyzed and zoomed in," and he wanted to know "the procedure for pulling the video from the camera, downloading it onto the computer and copying it onto the compact disc."  (Id. at 40.)  When the IE asked petitioner what he thought the video would reveal if it was "zoomed in," petitioner stated, "the technology lies."  (Id.)  Petitioner also told the IE that C/O Farley was "lying" when he reported in the RVR that petitioner grabbed his chest.  Petitioner explained that he was simply moving in Farley's direction after being pepper-sprayed.  (Id.)  A new IE was not assigned after the issuance of the July 1, 2013 RVR.

At the August 8, 2013 disciplinary hearing, petitioner stated that he was dissatisfied with the IE's report.  He argued that another IE should have been assigned after the issuance of the third and final RVR because he had additional questions he wished to ask the IE.  (Id.)  The report of the disciplinary hearing contains the following comments by the Senior Hearing Officer (SHO) about the investigative employee:

> In the hearing, THOMPSON stated that he is dissatisfied because he was not assigned an I.E. for the most recently issued disciplinary, stating that he had more questions for the I.E. to answer.  After careful review of these objections in the hearing, it was my conclusion that these objections were without merit for the following reasons:  THOMPSON asked three (3) additional questions that had to do with video evidence.  These did not need to be evaluated by an I.E. because all videos were reviewed in the hearing.  An I.E. report was completed by Officer Z. Basnett for the first reissued RVR (log number B13-04-0046).  The completed I.E. report was accomplished with ample screening of witnesses.  The

3

> CDO determined this report to be satisfactory. Therefore, Officer Basnett's I.E. report was issued with this copy (log number B13-07-0003) and used for this hearing.

(Id. at 36-37.)

Petitioner requested that C/O Farley be called as a witness at the disciplinary hearing. (Id. at 37.) This request was granted. Petitioner posed five questions to C/O Farley. Those questions, and their resolution by the SHO, were as follows:

> 1. Approximately how many feet away from you was I [THOMPSON] when you noticed my innocently advancing in your direction? The SHO allowed Officer Farley to answer this question and he responded that the distance was approximately ten (10) inches. After discussion as to whether the distance was relevant, the SHO discovered that THOMPSON was attempting to place blame on Officer Farley because he did not move to avoid the alleged Battery. The SHO found this question irrelevant to the charge. The question at hand is whether THOMPSON committed Battery or not. Officer Farley's awareness has no bearing on the issue.
>
> 2. Did my advancing toward you look of an assaultive manner? Or threatening? The SHO also found this question irrelevant. The perception of THOMPSON's demeanor would have no bearing on his guilt or innocence.
>
> 3. How come you couldn't prevent [my] alleged grab? The SHO also found this question irrelevant. The physical ability of Officer Farley to defend himself is not in question.
>
> 4. Have you reviewed frame 3 [channel 3] of the video evidence? The SHO also found this question irrelevant. Officer Farley was an eye witness to the alleged Battery.
>
> 5. How come it shows you stepping to the side, us having much distance in between us where the alleged grab suppose to have occurred, when I innocently directed towards you when separating from combating inmate Davis? The SHO also found this question irrelevant. The physical movements or ability of Officer Farley is not in question.

(Id.)

Petitioner requested "numerous other witnesses at the hearing;" he had "written questions prepared" for those witnesses.[2] (Id.) The SHO reviewed all of these questions and determined

---

[2] According to the second level administrative review of petitioner's prison appeal, petitioner requested eight other correctional officers and "all other Reporting Officers" as witnesses. (ECF No. 1 at 30.)

4

that they had already been addressed by the IE's report. Accordingly, "the SHO denied the appearance of the additional witnesses as the submitted questions had already been answered or deemed irrelevant." (Id.)

A videotape of the events related to the battery charge was reviewed by petitioner prior to the disciplinary hearing and was also reviewed at the hearing. (Id.) According to the second level administrative review of petitioner's prison appeal, on the videotape petitioner "can be seen jumping up after attacking inmate Davis, rushing towards and grabbing or striking Officer T. Farley in the chest." (Id. at 30.)[3]

Petitioner pled not guilty to the disciplinary charge, stating:

> Video channel 3 shows that I did not grab the officer. The Hearing Officer is partial/biased and failed to view the video evidence impartially.

(Id. at 37.)

Petitioner was found guilty of a violation of 15 Cal. Code Regs. § 3005(d)(1); specifically, "Battery on a Peace Officer." (Id. at 38.)[4] The guilty finding was based on the preponderance of the evidence submitted at the disciplinary hearing. (Id.) This evidence consisted of: (1) the

---

[3] Petitioner states, on the other hand, that a review of "ch. 3 and 4" of the video reflects that petitioner never came into contact with C/O Farley but that Farley stepped to the side and struck petitioner with his baton as petitioner was trying to "prone out in a secure location." (ECF No. 1 at 94.) Petitioner explains that "by my arm crossing Farley's image on video, it presents an optic illusion that contact was made; foremost, on Ch. 9, but a reasonable officer would acknowledge that on Ch. 3 and 4 it demonstrates no contact was made which D. Shorts deliberately refused to acknowledged." (Id.)

[4] The crime was defined as follows:

> PC 242 *Battery* means the deliberate use of force or violence on the person of another. If the battery is unintentional, the inmate remains responsible if it is the result of reckless indifference. *Reckless indifference* means that any reasonable person committing the intended action would understand that battery was probable. Penal Code 31 and Title 15 defines a *Principle* as a person involved in the commission of a crime, felony or misdemeanor, whether they directly commit the act constituting the offense, or aid and abet in its commission, or not being present, have advised and encouraged its commission, or who, by threats menaces, command or coercion, compel another to commit any crime.

(Id.)

testimony of C/O Farley and the allegations in the RVR of December 10, 2012, including allegations that petitioner "got up and rushed toward Farley attempting to grab him by the chest;" and (2) the video evidence reviewed during the disciplinary hearing, wherein petitioner "can be seen coming in contact with Officer Farley." (Id.)

Petitioner was assessed a 150 day time credit forfeiture and was referred to a classification committee for placement in a secure housing unit. The credit forfeiture "reaffirm[ed] the assessment originally assessed and subsequently dismissed from log number B12-12-0010 then again from Log #B13-04-0046 when these disciplinaries were ordered reissued and reheard." (Id.)

Petitioner appealed his disciplinary conviction in a petition for writ of habeas corpus filed in the California Superior Court. (ECF Nos. 11-1, 11-2.) Therein, he challenged the SHO's refusal to: (1) appoint a new investigative employee after the third RVR was issued; (2) ask all of petitioner's questions to the witnesses who were not called at the August 8, 2013 disciplinary hearing; and (3) "enhance" the videotape of the incident that was played at the disciplinary hearing. (Id.) The Superior Court rejected petitioner's arguments, ruling as follows:

> The hearing officer shall make a determination at a disciplinary hearing whether a preponderance of the evidence submitted at the hearing substantiates the RVR. While an inmate generally has the right to be present at the hearing, and may be permitted to present documentary evidence, the inmate does not have an automatic right to the assistance of an investigative employee, to call any witnesses requested by the inmate, and to freely question any witnesses who testify at the hearing. (Code of Regs., tit. 15 §§ 3315, 3320).
>
> Judicial review of administrative decisions such as this type of disciplinary decision is limited to determining whether the "decision is arbitrary, capricious, irrational, or an abuse of the discretion . . . [T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by prison officials." The Court does not examine the entire record, independently assess the credibility of witnesses, or re-weigh the evidence. In re Furnace (2010) 185 Cal.App.4th 649, 659 (citing Superintendent v. Hill (1985) 472 U.S. 445).
>
> Here, some evidence supported the senior hearing officer's finding of guilt against Petitioner.
>
> The petition for writ of habeas corpus is therefore denied.

(ECF No. 11-3.)

Petitioner subsequently challenged his disciplinary conviction in a petition for writ of habeas corpus filed in the California Court of Appeal, in which he raised the same claims that he raised before the Superior Court. (ECF No. 11-4.) That petition was summarily denied. (ECF No. 11-5.) Petitioner next filed a habeas petition in the California Supreme Court, raising essentially the same claims. (ECF No. 11-6.) The Supreme Court denied that petition with a citation to People v. Duvall, 9 Cal.4th 464, 474 (1995) (a habeas petition must "state fully and with particularity the facts on which relief is sought"); and In re Dexter, 25 Cal.3d 921, 925-26 (1979) (habeas relief is not available unless the petitioner has first exhausted available administrative remedies). (ECF No. 11-7.)

Petitioner filed a petition for writ of habeas corpus in this court on October 24, 2014. Respondent filed an answer on May 20, 2015, and petitioner filed a traverse on June 12, 2015.

**II.  Standards of Review Applicable to Habeas Corpus Claims**

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). A federal writ is not available for alleged error in the interpretation or application of state law. See Wilson v. Corcoran, 562 U.S. 1, 5 (2010); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000).

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

For purposes of applying § 2254(d)(1), "clearly established federal law" consists of holdings of the United States Supreme Court at the time of the last reasoned state court decision.

Greene v. Fisher, 132 S. Ct. 38, 44 (2011); Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011) (citing Williams v. Taylor, 529 U.S. 362, 405-06 (2000)). Circuit court precedent "may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably." Stanley, 633 F.3d at 859 (quoting Maxwell v. Roe, 606 F.3d 561, 567 (9th Cir. 2010)). However, circuit precedent may not be "used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." Marshall v. Rodgers, 133 S. Ct. 1446, 1450 (2013) (citing Parker v. Matthews, 132 S. Ct. 2148, 2155 (2012)). Nor may it be used to "determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court, be accepted as correct. Id. Further, where courts of appeals have diverged in their treatment of an issue, it cannot be said that there is "clearly established Federal law" governing that issue. Carey v. Musladin, 549 U.S. 70, 77 (2006).

A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts. Price v. Vincent, 538 U.S. 634, 640 (2003). Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. Lockyer v. Andrade, 538 U.S. 63, 75 (2003); Williams, 529 U.S. at 413; Chia v. Cambra, 360 F.3d 997, 1002 (9th Cir. 2004). A federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams, 529 U.S. at 412. See also Schriro v. Landrigan, 550 U.S. 465, 473 (2007); Lockyer, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'") "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).

Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Richter, 562 U.S. at 103.

If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing court must conduct a de novo review of a habeas petitioner's claims. Delgadillo v. Woodford, 527 F.3d 919, 925 (9th Cir. 2008); see also Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised.").

The court looks to the last reasoned state court decision as the basis for the state court judgment. Stanley, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, this court may consider both decisions to ascertain the reasoning of the last decision. Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Richter, 562 U.S. at 99. This presumption may be overcome by a showing "there is reason to think some other explanation for the state court's decision is more likely." Id. at 99-100 (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)). Similarly, when a state court decision on a petitioner's claims rejects some claims but does not expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the merits. Johnson v. Williams, 133 S. Ct. 1088, 1091 (2013).

Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). Stanley, 633 F.3d at 860; Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). "Independent review of the record is not de novo

1   review of the constitutional issue, but rather, the only method by which we can determine whether
2   a silent state court decision is objectively unreasonable." Himes, 336 F.3d at 853. Where no
3   reasoned decision is available, the habeas petitioner still has the burden of "showing there was no
4   reasonable basis for the state court to deny relief." Richter, 562 U.S. at 98.

5   A summary denial is presumed to be a denial on the merits of the petitioner's claims.
6   Stancle v. Clay, 692 F.3d 948, 957 & n.3 (9th Cir. 2012). While the federal court cannot analyze
7   just what the state court did when it issued a summary denial, the federal court must review the
8   state court record to determine whether there was any "reasonable basis for the state court to deny
9   relief." Richter, 562 U.S. at 98. This court "must determine what arguments or theories . . . could
10  have supported, the state court's decision; and then it must ask whether it is possible fairminded
11  jurists could disagree that those arguments or theories are inconsistent with the holding in a prior
12  decision of [the Supreme] Court." 562 U.S. at 102. The petitioner bears "the burden to
13  demonstrate that 'there was no reasonable basis for the state court to deny relief.'" Walker v.
14  Martel, 709 F.3d 925, 939 (9th Cir. 2013) (quoting Richter, 562 U.S. at 98).

15  When it is clear, however, that a state court has not reached the merits of a petitioner's
16  claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal
17  habeas court must review the claim de novo. Stanley, 633 F.3d at 860; Reynoso v. Giurbino, 462
18  F.3d 1099, 1109 (9th Cir. 2006); Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003).

19  **III. Due Process in the Context of Prison Disciplinary Proceedings**

20  It is well established that inmates subjected to prison disciplinary action are entitled to
21  certain procedural protections under the Due Process Clause but are not entitled to the full
22  panoply of rights afforded to criminal defendants. Wolff v. McDonnell, 418 U.S. 539, 556
23  (1974); see also Superintendent v. Hill, 472 U.S. 445, 455-56 (1985); United States v. Segal, 549
24  F.2d 1293, 1296-99 (9th Cir. 1977) (observing that prison disciplinary proceedings command the
25  least amount of due process along the prosecution continuum). An inmate is entitled to advance
26  written notice of the charge against him as well as a written statement of the evidence relied upon
27  by prison officials and the reasons for any disciplinary action taken. See Wolff, 418 U.S. at 563.
28  In the prison disciplinary hearing context, an inmate does not have a right to counsel, retained or

1   appointed, although illiterate inmates are entitled to assistance.  Id. at 570.

2       An inmate also has a right to a hearing at which he may "call witnesses and present
3   documentary evidence in his defense when permitting him to do so will not be unduly hazardous
4   to institutional safety or correctional goals."  Wolff, 418 U.S. at 566.  See also Ponte v. Real, 471
5   U.S. 491, 495 (1985).  However, as a general rule, inmates "have no constitutional right to
6   confront and cross-examine adverse witnesses" in prison disciplinary hearings.  Ponte, 471 U.S.
7   at 510 (Marshall, J., dissenting).  See also Baxter v. Palmigiano, 425 U.S. 308, 322-23 (1976)
8   ("Mandating confrontation and cross-examination, except where prison officials can justify their
9   denial on one or more grounds that appeals to judges, effectively preempts the area that Wolff left
10  to the sound discretion of prison officials.")  The disciplinary hearing must be conducted by a
11  person or body that is "sufficiently impartial to satisfy the Due Process Clause."  Wolff, 418 U.S.
12  at 571.

13      The decision rendered on a prison disciplinary charge must be supported by "some
14  evidence" in the record.  Hill, 472 U.S. at 455.  A finding of guilt on a prison disciplinary charge
15  cannot be "without support" or "arbitrary."  Id. at 457.  However, the "some evidence" standard is
16  "minimally stringent," and a decision must be upheld if there is any reliable evidence in the
17  record that could support the conclusion reached by the fact finder.  Powell v. Gomez, 33 F.3d 39,
18  40 (9th Cir. 1994) (citing Hill, 472 U.S. at 455-56; and Cato v. Rushen, 824 F.2d 703, 705 (9th
19  Cir. 1987)).  See also Burnsworth v. Gunderson, 179 F.3d 771, 773 (9th Cir. 1990); Zimmerlee v.
20  Keeney, 831 F.2d 183, 186 (9th Cir. 1987).  Determining whether this standard is satisfied in a
21  particular case does not require examination of the entire record, independent assessment of the
22  credibility of witnesses, or the weighing of evidence.  Toussaint v. McCarthy, 801 F.2d 1080,
23  1105 (9th Cir. 1986), abrogated in part on other grounds by Sandin v. Connor, 515 U.S. 472
24  (1995).  Indeed, in examining the record of a prison disciplinary conviction, a court is not to make
25  its own assessment of the credibility of witnesses or re-weigh the evidence.  Hill, 472 U.S. at 455.
26  The question is whether there is any reliable evidence in the record that could support the
27  decision reached.  Toussaint, 801 F.2d at 1105.
28  ////

Where a protected liberty interest exists, the requirements imposed by the Due Process Clause are "dependent upon the particular situation being examined." Hewitt v. Helms, 459 U.S. 460, 472 (1983). The process due is such procedural protection as may be "necessary to ensure that the decision . . . is neither arbitrary nor erroneous." Washington v. Harper, 494 U.S. 210, 228 (1990). In identifying the safeguards required in the context of prison disciplinary proceedings, courts must remember "the legitimate institutional needs of assuring the safety of inmates and prisoners" and avoid "burdensome administrative requirements that might be susceptible to manipulation." Hill, 472 U.S. at 454-55. The requirements of due process in the prison context involve a balancing of inmate rights and institutional security concerns, with a recognition that broad discretion must be accorded to prison officials. Wolff, 418 U.S. at 560-63; see also Baxter, 425 U.S. at 324.

**IV. Petitioner's Due Process Claims**

Petitioner claims that his right to due process was violated at his August 8, 2013 disciplinary hearing for the following reasons: (1) the SHO improperly failed to assign a new IE after the issuance of the third RVR; (2) he was not allowed to call all of his requested witnesses at the disciplinary hearing; (3) he was not allowed to ask C/O Farley his prepared questions; (4) the SHO refused to carefully view the videotape of the incident due to his personal bias against petitioner; and (5) his conviction was not supported by valid evidence. (ECF No. 1 at 15-22.) The court evaluates these claims in turn below.

**A. Investigative Employee**

Petitioner claims that he had a due process right to the assignment of a new investigative employee at his third disciplinary hearing on August 8, 2013. He alleges:

> Rather than assigning me an I.E. in third rehearing prison official(s) adopted the I.E. report conducted by Basnett in second hearing process and made it seem as if that report was conducted by I.E. in third hearing by changing the dates from when I.E. was assigned in second hearing to date when I.E. should have been assigned in third hearing.

(Id. at 15.) Petitioner argues that "investigative assistance was fundamental" because he wanted to question other officers at the scene about the fact that in their reports of the incident they stated

1    that petitioner moved in C/O Farley's direction after being pepper-sprayed, but did not state that
2    petitioner actually touched Farley. (Id. at 16.) He states, "they omit of seeing me grab him. I
3    wanted to know how did they miss such occasion." (Id.) Petitioner explains that he simply
4    moved toward C/O Farley after he was blinded with pepper spray while trying to get away from
5    inmate Davis. (Id.) He also explains that he wanted the SHO to view a different "channel" on the
6    videotape, because that channel would demonstrate he did not actually touch Farley. (Id.)
7    Petitioner has submitted his own affidavit, wherein he states that the video channel shown at the
8    evidentiary hearing creates an "optical illusion" that he came into contact with C/O Farley and
9    that a closer inspection of the video shows that he simply approached Farley before he got down
10   on the ground. (ECF No. 1 at 94.) Petitioner argues that the evidence against him was unreliable
11   because he was not allowed to present or gather other evidence which would demonstrate that he
12   did not come into physical contact with C/O Farley. (Id. at 17.)

13        To the extent petitioner is arguing the SHO violated state law or prison regulations in
14   failing to provide him with a new investigative employee, his claim is not cognizable in this
15   federal habeas proceeding. The federal writ is not available for alleged error in the application of
16   state law, and habeas corpus cannot be utilized in federal court to try state issues de novo. Rather,
17   petitioner must show that the decision of the state courts somehow "violated the Constitution,
18   laws, or treaties of the United States." Estelle, 502 U.S. at 68. See also Rivera v. Illinois, 556
19   U.S. 148, 158 (2009) ("[A] mere error of state law . . . is not a denial of due process");
20   Waddington v. Sarausad, 555 U.S. 179, 192 n.5 (2009). A habeas petitioner may not "transform a
21   state-law issue into a federal one" merely by asserting a violation of the federal constitution.
22   Langford v. Day, 110 F.3d 1380, 1389 (9th Cir. 1997).

23        Wolff instructs that an inmate should be provided assistance from a fellow inmate or staff
24   member where the inmate is illiterate or the issue is so complex that it is unlikely the inmate
25   could gather and present evidence necessary for an adequate comprehension of the case. Wolff,
26   418 U.S. at 470. As set forth above, a staff assistant was not assigned because petitioner spoke
27   English and was literate, and the issues were not complex. (ECF No. 1 at 36.) Petitioner agreed
28   that assignment of a staff assistant was not necessary. (Id.)

Clearly-established federal law does not provide an inmate with a right to an investigative employee. See Trujillo v. Vaughn, 269 Fed. Appx. 673, 674 (9th Cir. 2008) ("[T]he assignment of an investigative employee under Cal. Code Regs. tit. 15 § 3315(d)(1) does not equate to a determination that [petitioner] had a federal due process right to such assistance pursuant to Wolff."). Thus, petitioner has not shown that he had a federal constitutional right to any investigative employee, much less the right to a new IE after the third RVR was issued or the right to have the IE conduct an investigation that petitioner believed was thorough or that met his expectations. Under California regulations, an investigative employee is assigned if the "chief disciplinary officer or designee" determines that the complexity of the issues require further investigation, the inmate's housing status makes it unlikely that he can collect and present the evidence necessary for an adequate defense, or additional information is necessary for a fair hearing. 15 Cal. Code Regs. § 3315(d). An investigate employee acts "as a representative of the official who will conduct the disciplinary hearing rather than as a representative of the inmate." 15 Cal. Code Regs. § 3318(a)(3). Pursuant to these prison regulations, petitioner was assigned an investigative employee who gathered evidence and prepared a report that was used for the disciplinary hearing. Petitioner received copies of all applicable reports at least twenty-four hours in advance of the disciplinary hearing and was allowed to speak in his defense and to call C/O Farley as a witness. There is no evidence that petitioner was unable to adequately present a defense to the charges against him because a new IE was not assigned after the third RVR was issued.

Accordingly, for all of the reasons set forth above, petitioner is not entitled to relief on his claim that the SHO violated his right to due process in failing to assign a new IE after the third RVR was issued.

### B. Witnesses

Petitioner claims that the SHO violated his right to due process when he refused to allow him to ask C/O Farley his proposed questions and to call other witnesses at the disciplinary hearing. (ECF No. 1 at 18-21.) As explained above, the SHO allowed petitioner to call C/O Farley as a witness but concluded that four of the five questions he proposed to ask him were

irrelevant. Petitioner also requested "numerous" other witnesses at the hearing, but the SHO denied this request after determining that the questions petitioner wished to ask those witnesses had already been addressed in the IE's report. Petitioner argues his witnesses might have provided evidence that would exonerate him. He explains that he wished to ask his proposed witnesses why they did not report seeing him touch C/O Farley. (ECF No. 1 at 19.) He also wanted to question C/O Farley on this subject. (Id. at 20.) Petitioner explains again that he simply veered in Farley's direction after being blinded by pepper spray, but that he never actually touched Farley. (Id.) Petitioner believes testimony from these witnesses might also have "undermined" the video played at the disciplinary hearing, which petitioner "insist[s] is an optic illusion." (Id.) Petitioner alleges that the SHO's decision with regard to these witnesses was the result of "bias." (Id. at 20.)

    The right to call witnesses at a disciplinary hearing is not absolute. Wolff gives prison officials flexibility to keep the hearing within reasonable limits and allows them to refuse to call witnesses when doing so would risk reprisal or undermine authority, or when the evidence would be irrelevant, unnecessary, or hazardous. Wolff, 418 U.S. at 566. Given these limitations, the Supreme Court has observed that a constitutional challenge to a prison official's refusal to allow an inmate to call witnesses may "rarely, if ever, be successful." Ponte, 471 U.S. at 499. Nevertheless, when prison officials refuse to call witnesses requested by a prisoner at a disciplinary hearing, they must explain their reasons, either as part of the administrative record or by later testimony in court. Id. at 497.

    Petitioner has failed to show that the SHO violated his right to due process when he denied petitioner's request to call witnesses or to question C/O Farley. The SHO concluded that petitioner's questions to C/O Farley and his other proposed witnesses had already been answered or were irrelevant and he explained this to petitioner when he denied his request to call these witnesses. This explanation is all the federal constitution requires. See Pannell v. McBride, 306 F.3d 499, 503 (7th Cir. 2002) ("[P]risoners do not have the right to call witnesses whose testimony would be irrelevant, repetitive, or unnecessary.") See also Graves v. Knowles, No. 06-15477, 231 Fed. Appx. 670, 672 (9th Cir. 2007) (hearing officer's refusal to call witnesses at

1  disciplinary hearing did not violate due process when their testimony was either irrelevant or
2  would not have supported the inmate's defense; moreover, given the evidence against inmate, any
3  error in calling witness was harmless); Baird v. Cate, No. CV 12-5377 GAF (AN), 2012 WL
4  3283424, at *8 (C.D. Cal. July 9, 2012) (rejecting petitioner's claim that his due process rights
5  were violated when he was denied the opportunity to call a witness or introduce photographs
6  where the evidence would have been cumulative or irrelevant).  Because prison officials
7  explained their reasons for refusing petitioner's request to call or question these witnesses, and
8  those reasons are not arbitrary or improper, petitioner is not entitled to federal habeas relief on
9  this claim.

### C. Biased Decisionmaker

Petitioner claims that the SHO's decisions with regard to the playing of the videotape at the disciplinary hearing were the result of bias.  (ECF No. 1 at 21-22.)  Specifically, he claims that the SHO "fail[ed] to be impartial by refusing to accept Channel 3 and 4 of video evidence demonstrating my innocence, as it shows RVR officer Farley preventing my contacting him, which exonerated me of batter [sic] on peace officer."  (Id. at 21.)  Petitioner explains that the SHO refused "to accept my innocence on video evidence, which a reasonable officer, impartial, would not have defied and exonerated me of charges or rendered a favorable outcome."  (Id.)  In essence, petitioner appears to be claiming that the SHO was biased against him and, for this reason, failed to carefully view the videotape evidence to determine whether petitioner actually made contact with C/O Farley.

Inmates are entitled to a fair and impartial decision-maker at disciplinary hearings. Edwards v. Balisok, 520 U.S. 641, 647 (1997) ("The due process requirements for a prison disciplinary hearing are in many respects less demanding than those for criminal prosecution, but they are not so lax as to let stand the decision of a biased hearing officer who dishonestly suppresses evidence of innocence."); In re Murchison, 349 U.S. 133, 136 (1955) ("[a] fair trial in a fair tribunal is a basic requirement of due process"); White v. Indiana Parole Board, 266 F.3d 759, 767 (7th Cir. 2001) ("Wolff holds that prisoners are entitled to impartial decisionmakers" (citations omitted)).  In order to prevail on a claim of judicial bias, a petitioner must overcome a

1   "strong presumption that a judge is not biased or prejudiced." Sivak v. Hardison, 658 F.3d 898,
2   924 (9th Cir. 2011) (quoting Rhoades v. Henry, 598 F.3d 511, 519 (9th Cir. 2010)).

3   There is no competent evidence before this court that the SHO at petitioner's disciplinary
4   hearing was biased or impartial, that he acted in an arbitrary manner, or that any of his decisions
5   were the result of bias. Petitioner has not substantiated his allegations that the SHO's handling of
6   the videotape evidence was improper, that he failed to closely examine the images on the
7   videotape, that he viewed the wrong channel on the videotape, or that he harbored any bias
8   against petitioner. Petitioner's conclusory allegations fail to overcome the "strong presumption"
9   that the SHO was not biased or prejudiced. Under these circumstances, the California Supreme
10  Court's rejection of petitioner's claim of bias is not unreasonable, nor is it "so lacking in
11  justification that there was an error well understood and comprehended in existing law beyond
12  any possibility for fairminded disagreement." Richter, 131 S. Ct. at 786-87. Accordingly,
13  petitioner is not entitled to habeas relief on his claim that impartiality or bias on the part of the
14  SHO violated his right to due process.

### D. Sufficiency of the Evidence

16  Throughout his petition, petitioner claims that the evidence supporting the guilty finding
17  on the disciplinary charge was incomplete and misleading, and therefore insufficient. Petitioner
18  requests that this court obtain the video evidence against him and review it "in camera" in order
19  to determine whether petitioner was "deprived [of] due process." (ECF No. 1 at 22.) Petitioner
20  also argues that the state courts failed to explain why the evidence against him was "credible."
21  (Id.) He contends that he was denied his right to "impartial fact finding." (Id.) Petitioner also
22  argues that the SHO "falsified report in documentation of impartial factfinding by alleging I only
23  requested two witnesses to question them [about] video evidence." (Id. at 23.) Finally, petitioner
24  argues that C/O Farley's RVR is "false" and that the SHO improperly relied on that report to deny
25  him the right to call his proposed witnesses at the disciplinary hearing. (Id.) He argues, "[p]rison
26  officials had an agenda to deprive me of my due process and find me guilty under the pretext of
27  my questions being irrelevant and optic illusion on video tape (Channel 9) to support arbitrary
28  findings." (Id.)

After a review of the record, this court concludes that there was "some evidence" supporting the hearing officer's finding that petitioner committed the prison rules violation with which he was charged. Specifically, the statements of C/O Farley in his RVR that petitioner attempted to grab his chest, and the videotape of the event, in which petitioner was seen "coming in contact" with C/O Farley, constitute "some evidence" to support the hearing officer's finding that petitioner was guilty of battery on a peace officer. Indeed, Correctional Officer Farley's statements, standing alone, were sufficient to support petitioner's disciplinary conviction. See Ruelas v. Zuercher, No. 07-1140, 2007 WL 1991166, *2 (10th Cir. July 11, 2007) (incident report supported the disciplinary hearing officer's finding of guilt and due process requirements were thus satisfied); Rhatigan v. Ward, No. 05-6388, 2006 WL 1851222, *2 (10th Cir. July 6, 2006) (investigating officer's report constituted "some evidence" to support a disciplinary conviction for possession of contraband); Ellington v. Salinas Valley State Prison, No. CV 13-1602 ABC (AN), 2013 WL 1498913, at *3 (C.D. Cal. Mar. 15, 2013) ("[T]he RVR overwhelmingly establishes the SHO's findings were supported by 'some evidence in the record.'"); Dunn v. Swarthout, 2:11-cv-2731 JAM GGH P, 2013 WL 876410, at *8 (E.D. Cal. May 7, 2013) ("Furthermore, some evidence is supplied by the RVR which refers to the CDCR 115 wherein petitioner admitted to being in a physical altercation with his cellmate[.]")

Petitioner argues that C/O Farley "lied" when he reported that petitioner grabbed his chest. He also argues that the videotape, if viewed more closely, would show that petitioner never actually came into contact with Farley. However, as noted above, in reviewing petitioner's due process claim this court must accept the hearing officer's assessment of the credibility of witnesses and may not make its own assessment or re-weigh the evidence. Hill, 472 U.S. at 455. The statements in the RVR, along with the videotape evidence, were sufficient under Wolff to support petitioner's disciplinary conviction.

In this case, petitioner was given advance written notice of the disciplinary charges brought against him. He was also provided a written statement of the evidence relied upon by prison officials and the reasons for the disciplinary action taken against him. In addition, his disciplinary conviction was supported by "some evidence" in the record. Petitioner was afforded

all the process that was due him under the Constitution in the context of his prison disciplinary proceeding. Accordingly, he is not entitled to federal habeas relief with respect to his due process claims.[5]

**V. Conclusion**

For the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen days after service of the objections. Failure to file objections within the specified time may waive the right to appeal the District Court's order. Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991). In his objections petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case. See Rule 11, Federal Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

Dated: June 14, 2016

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

Thompson2501.hc:dmou8(2):du

---

[5] Throughout his petition, petitioner complains that the California courts deprived him of "judicial review" or "access to the courts" by failing to specifically address each of his claims. See, e.g., ECF No. 1 at 21, 23. There is no evidence in the record that petitioner's First Amendment right to access the courts was violated. Petitioner was able to proceed with his habeas petitions in all available California Courts and he obtained a decision on all of his claims. There is no federal constitutional prohibition preventing state courts from disposing of claims in a summary fashion or on procedural grounds, and there is no federal requirement that state courts consider claims with a full discussion of the merits. Petitioner simply disagrees with the result reached by the California courts. To the extent petitioner's claims are based on alleged violations of state laws, such as the California Penal Code and/or California Rules of Court, they are not cognizable in this federal habeas corpus proceeding. See Rivera, 556 U.S. at 158.